UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA          )
                                  )
     v.                           )     Criminal No. 11-10195-RWZ
                                  )
NICOLAS ANTHIS                    )


MEMORDANDUM OF LAW IN SUPPORT OF DEFENDANT
NICOLAS ANTHIS' MOTION TO SUPPRESS EVIDENCE


I.      **Background Re: January 17, 2010 Incident**

January 17, 2010, New York City. As part of an investigation concerning

drug trafficking, bulk cash smuggling, and money laundering, members of a DEA

Task Force ("agents") were conducting surveillance of a known target (Gjavit Thaqi)

as he was traveling in a Lincoln Navigator.  While the Navigator was being observed

in a gas station in the Bronx, agents observed a Cadillac Deville driven by another

target (Nicolas Masi) pull up to the Navigator, remove a red duffel bag from the

Cadillac, and place it in the back of the Navigator.  The agents trailed the Navigator

as it drove from the Bronx to Manhattan and parked southbound on Broadway.

Ten minutes later, an individual was observed removing a large black bag

from the Navigator and placing it in the back of a black BMW that was also on

Broadway.  As the BMW drove off, agents in multiple unmarked vehicles converged

upon the BMW, blocking it from moving, and approached on foot with firearms

drawn.  At the time of the stop, Eleftherios Sardis (Sardis) was the driver and the

defendant Anthis was the front seat passenger.   The agents ordered Sardis and

Anthis to place their hands out the window, and upon doing so, the agents opened

the BMW's front doors and ordered Sardis and Anthis out.  Once they alighted, the

agents restrained both Sardis' and Anthis' hands with zip ties and then sought their consent to search.  Anthis gave verbal consent at the scene, but was later asked to sign a consent form after he was arrested and brought back to the New York Field Division office for interrogation ("interview").

Before Anthis agreed to be interviewed, the interviewing agents informed him that: (1) he was not under arrest and had been restrained only for his and the agents' safety; (2) he was being brought back to the field office to verify that he had no outstanding warrants in the United States; and (3) if he had no outstanding warrants, then he would be free to go with his car and possibly the money.  The agents never allowed Anthis the opportunity to make a telephone call between the time of his arrest and the interview.  While at the field office, Anthis was read his Miranda rights, and he thereafter proceeded to answer the agents' questions.

Anthis submits that the verbal consent he gave at the scene prior to the search was given under inherently coercive circumstances, was not voluntary, and should therefore be suppressed.  Anthis further submits that statements he made during the custodial interrogation at the agents' field office should likewise be suppressed as being (a) derivative from the initial illegal search, and (b) the product of an invalid Miranda waiver, which was not made voluntarily, knowingly, and intelligently.

## II.     Legal Standard/Argument

"The Fourth Amendment protects against unreasonable searches and seizures by requiring, in most cases, a valid warrant. A warrantless search or seizure is presumptively unreasonable and will be upheld only if an exception to the warrant requirement applies." United States v. Smith, 533 F. Supp. 2d 227, 231 (D. Mass. 2008) (internal citation omitted), citing Bilida v. McCleod, 211 F.3d 166, 171

(1st Cir. 2000).  "Although searches without a warrant are presumptively unreasonable under the Fourth Amendment, consensual searches are a recognized exception to the Fourth Amendment's warrant requirement."  United States v. Landan, 2009 U.S. Dist. LEXIS 106305, 4-5 (D. Mass. 2009) (internal quotation omitted), citing United States v. Vanvliet, 542 F.3d 259, 264 (1st Cir. 2008). "The government bears the burden of proving, by a preponderance of the evidence, that the defendant gave his consent voluntarily." Id. at 5.  "Voluntariness is a question of fact that turns on the totality of circumstances attending to the interaction between the defendant and the searching officers."  Id., citing Vanvliet, 542 F.3d at 264. "Consent is not voluntary if it is either coerced or was granted only in submission to a claim of lawful authority." Id., citing Schneckloth v. Bustamonte, 412 U.S. 218, 233 (1973).  "Consent is voluntary when the defendant makes an essentially free and unconstrained choice and his will has not been overborne and his capacity for self-determination not critically impaired." Id. (internal quotations omitted), citing United States v. Forbes, 181 F.3d 1, 5 (1st Cir. 1999).

Here, the facts support Anthis' contention that he did not freely and voluntarily give consent to the search of the BMW.  Specifically, when the agents sought consent to search, multiple agents had already approached him with guns drawn, ordered him out of the car, and restrained him with zip ties.  As such, any verbal consent he gave at the scene was not the product of rational thought and contemplation, but instead, coercion.  Further, the fact that the agents subsequently had Anthis sign a consent to search form once he was arrested and taken to their field office does not cure the initial coerced and involuntary consent.

Another exception to the warrant requirement is the "motor vehicle exception," which "permits the warrantless search of a motor vehicle when

supported by probable cause," irrespective of the existence of any particular

exigency. Id., citing Coolidge v. New Hampshire, 403 U.S. 443, 460 (1971) (need for

probable cause); and United States v. Panitz, 907 F.2d 1267, 1271-72 (1st Cir.

1990) (no need for exigency). "Probable cause to search a vehicle requires that at

the time of the search, the officer had 'reasonably trustworthy information of

supporting facts and circumstances' to justify the search. United States v. Infante-

Ruiz, 13 F.3d 498, 502 (1st Cir. 1994). Probable cause exists when there is a fair

probability that contraband or evidence will be found in the place described. United

States v. Moore, 790 F.2d 13, 15 (1st Cir. 1986). A probable cause determination

should be based on the totality of the circumstances. Illinois v. Gates, 462 U.S.

231[] (1983)." Smith, 533 F. Supp. 2d at 234. "Probable cause must be based [] on

supporting facts and circumstances," and "may not be based on 'conventional

wisdom' or reputation." Id. at 235.

Here, the agents did not have probable cause to stop and search Anthis'

vehicle when they did so. Though they may have had their suspicion, they did have

not offered any "reasonably trustworthy information of supporting facts and

circumstances'" suggesting "a fair probability" that the bag contained contraband.

See Smith, 533 F. Supp. 2d at 234.

The "fruits of the poisonous tree" doctrine, set forth in Wong Sun v. United

States, 371 U.S. 471, 481-488 (1963), bars the admission of evidence "seized as a

result of a constitutional illegality." This exclusionary rule "prohibits introduction

into evidence of tangible materials seized during an unlawful search . . . , and of

testimony concerning knowledge acquired during an unlawful search." Murray v.

United States, 487 U.S. 533, 536-537 (1988) (internal citations omitted). The rule

further "prohibits the introduction of derivative evidence, both tangible and

testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes 'so attenuated as to dissipate the taint.'"  Id.

Here, the evidence seized from the BMW is subject to the exclusionary rule because such evidence resulted from a warrantless search, without probable cause, and without valid consent.  Anthis' subsequent custodial statements during his interrogation at the agents' field office on January 18, 2010 should likewise be suppressed as being derivative of the preceding motor vehicle search.

Anthis' statements should also be suppressed because it was not the product of a valid Miranda waiver.  See Miranda v. Arizona, 384 U.S. 436 (1966).  "A Miranda waiver is valid only when it is made 'voluntarily, knowingly, and intelligently.'"  United States v. Cosme, 484 F. Supp. 2d 194, 199 (D. Mass. 2007), citing Moran v. Burbine, 475 U.S.  412, 421 (1986).  Here, Anthis' waiver of his Miranda rights was not made knowingly and intelligently because it was given under the distress of the preceding illegal search and seizure, as well as the agents' false assertion that he was not under arrest and would be allowed to leave with his vehicle and possibly the seized money if he agreed to be interrogated.  Moreover, the agents' failure to allow Anthis (a Canadian resident) the opportunity to make a telephone call after his arrest suggests that they deliberately intended to keep him ignorant of his rights, and is further proof that Anthis' waiver was not voluntary, knowing, and intelligent.

### III.    Background Re: October 22, 2010 Incident

October 22, 2010, Ontario, California.  A joint task force of local police officers and federal agents, while conducting surveillance at the Ayres Inn & Suites

in Ontario, California, observed Anthis standing outside the hotel near a gray
Mazda (rental).  Five minutes later, the agents observed a Hispanic male operating a
gray Ford park next to the Mazda, and observed Anthis retrieve a black duffel bag
from the back seat of the Mazda and hand the bag to the Hispanic male, who placed
the bag in the back seat of the Ford.  Anthis was then observed to remove a light
green duffel bag from the trunk of the Ford and walk inside the hotel.

Over the next hour, Anthis was observed repeatedly walking in and out of the
hotel while speaking on a cellular phone.  As he stood outside the hotel with the
green duffel bag at his feet, members of the Ontario Police Department,
accompanied by federal agents, seized and opened the duffel bag without his
consent, and detained him after discovering money therein.  When Anthis inquired
as to why he was being detained, he was told that the police had received a call that
there was a suspicious person hanging around.  Anthis informed the officers that
he was a guest of the hotel, and produced his hotel room key, which the officers
seized.  The officers held Anthis' hands behind his back and patted him down.  At
that time, federal agents also approached Anthis and asked if he had a car.  Upon
producing car keys, the agents took the keys from Anthis, opened the Mazda (which
was parked in the hotel's parking lot), and seized cellular phones and other items
found therein.

Task Force Officer Jessie Perez ("Perez") detained Anthis in the hotel's
parking lot.  During this time, Perez  interrogated Anthis concerning the money,
while other agents went and searched his hotel room without his consent.  During
the interrogation, Anthis made statements concerning the source of the money and
his activities relative thereto.

**IV.      Legal Standard/Argument**

For the legal reasons set forth above, in part II *supra,* Anthis submits that

the warrantless seizure and search of the duffel bag was in violation of his rights

under the Fourth Amendment, and must therefore be  must be suppressed. <u>See</u> <u>.</u>

<u>Smith</u>, 533 F. Supp. 2d at 231; <u>Bilida v. McCleod</u>, 211 F.3d at 171; <u>see</u> <u>also</u>

<u>Minnesota v. Carter</u>, 525 U.S. 83, 88 (1998).  Anthis further submits that the

statements he made during his interrogation by Task Force Officer Perez must also

be suppressed, because (1) it was the product of the preceding illegal search and

seizure, <u>Wong Sun</u>, 371 U.S. at 481-488, and (2) because it was unwarned, in

violation of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

CONCLUSION

For all of the foregoing reasons, the defendant Nicolas Anthis respectfully

submits that all evidence directly and derivatively obtained as a result of the

violation of his Fourth and Fifth Amendment rights on January 17, 2010 and

October 22, 2010 must be suppressed.

NICOLAS ANTHIS,
By His Attorney,

*/s/ Tonomey A. Coleman*
Tonomey A. Coleman
BBO #561178
15 Court Square, Suite 500
Boston, MA 02108
DATED:  July 17, 2012              617-361-1445

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent
to the registered participants as identified on the Notice of Electronic Filing (NEF)
on July 17, 2012.

/s/ Tonomey A. Coleman
Tonomey A. Coleman